**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ILLINOIS PUBLIC RISK FUND | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PURDUE PHARMA L.P., PURDUE PHARMA, | ) | Civil Action No. 19-cv-03210 |
| INC., PURDUE FREDERICK COMPANY, INC., | ) | Hon. Matthew F. Kennelly |
| RHODES PHARMACEUTICALS, CEPHALON, | ) | |
| INC., TEVA PHARMACEUTICAL INDUSTRIES, | ) | |
| LTD., TEVA PHARMACEUTICALS USA, INC., | ) | |
| JANSSEN PHARMACEUTICALS, INC., JOHNSON & | ) | |
| JOHNSON, INC., ORTHO-MCNEIL-JANSSEN | ) | |
| PHARMACEUTICALS, INC., JANSSEN | ) | |
| PHARMACEUTICA, INC., NORAMCO, INC., ENDO | ) | |
| HEALTH SOLUTIONS, INC., ENDO | ) | |
| PHARMACEUTICALS, INC., PAR | ) | |
| PHARMACEUTICAL COMPANIES INC., | ) | |
| ALLERGAN PLC, ACTAVIS KADIAN, LLC, | ) | |
| ACTAVIS ELIZABETH, LLC, ACTAVIS PLC, | ) | |
| WATSON PHARMACEUTICALS, | ) | |
| INC., WATSON LABORATORIES, INC., | ) | |
| ACTAVIS PHARMA, INC., MALLINCKRODT PLC, | ) | |
| MALLINCKRODT LLC, AMERICAN ACADEMY OF | ) | |
| PAIN MEDICINE, AMERICAN GERIATRIC | ) | |
| SOCIETY, AMERICAN PAIN SOCIETY, | ) | |
| AMERISOURCEBERGEN CORPORATION, | ) | |
| CARDINAL HEALTH, INC., MCKESSON | ) | |
| CORPORATION, PAUL MADISON, and JOSEPH | ) | |
| GIACCHINO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MCKESSON'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

I.    PLAINTIFF'S ACTION.............................................................................................. 2

II.   THE MULTIDISTRICT LITIGATION ...................................................................... 4

ARGUMENT ................................................................................................................... 5

I.    THE COURT SHOULD DEFER CONSIDERATION OF PLAINTIFF'S REMAND
MOTION.................................................................................................................... 5

II.   PLAINTIFF'S COMPLAINT NECESSARILY RAISES DISPUTED AND
SUBSTANTIAL ISSUES OF FEDERAL LAW ..................................................... 6

      A.    The Complaint "Necessarily Raises" Federal Questions........................................ 7

      B.    The Parties "Actually Dispute" the Federal Issues. ............................................. 11

      C.    The Federal Issues Are "Substantial." ................................................................. 12

      D.    Federal Jurisdiction Will Not Disrupt the Congressionally Approved Balance of
Federal-State Judicial Responsibilities. ............................................................... 14

III.   THE REMAND DECISIONS CITED BY PLAINTIFF ARE DISTINGUISHABLE; THE
MDL COURT HAS NOT REJECTED MCKESSON'S ASSERTED GROUND FOR
REMOVAL.............................................................................................................. 15

CONCLUSION.............................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*,
    913 F. Supp. 2d 243 (E.D. Va. 2012) ....................................................................15

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*,
    850 F.3d 714 (5th Cir. 2017) ..............................................................................12

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005)..........................................................................6, 7, 13

*Burda v. M. Ecker Co.*,
    954 F.2d 434 (7th Cir. 1992) .................................................................................8

*Camden County v. Purdue Pharma L.P.*,
    No. 1:18-cv-11983 (D.N.J.) ..................................................................................6

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987)........................................................................................9, 10

*Chicago v. Cardinal Health, Inc.*,
    No. 1:18-cv-01639 (N.D. Ill.) ................................................................................4

*Chicago v. Int'l C. of Surgeons*,
    522 U.S. 156 (1997)............................................................................................10

*Chicago v. Purdue Pharma L.P.*,
    No. 1:14-cv-04361 (N.D. Ill.) ................................................................................4

*City of Bangor v. Purdue Pharma L.P.*,
    No. 1:18-cv-00298 (D. Me.) ..................................................................................6

*City of Granite City, IL v. AmerisourceBergen Drug Corp.*,
    2018 WL 3408126 (S.D. Ill. July 13, 2018) .........................................................16

*City of Harvey v. Purdue Pharma L.P.*,
    No. 1:18-cv-05756 (N.D. Ill. Sept. 19, 2018), ECF No. 46................................1, 5

*City of Paterson v. Purdue Pharma L.P.*,
    Case No. 2:17-cv-13433 (D.N.J.) ..........................................................................5

*County of San Mateo v. McKesson Corporation*,
    No. 3:18-cv-04535 (N.D. Cal.) ..............................................................................5

*Cty. of Hudson v. Purdue Pharma L.P.*,
No. 2:18-cv-09029 (D.N.J.) ...................................................................................6

*Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*,
776 F.3d 463 (7th Cir. 2015) ..........................................................................9, 15

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005) .............................................................................................7

*Gilmore v. Weatherford*,
694 F.3d 1160 (10th Cir. 2012) .........................................................................11

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
545 U.S. 308 (2005) ....................................................................................2, 7, 12

*Gunn v. Minton*,
568 U.S. 251 (2013) ............................................................................2, 7, 11, 12

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
535 U.S. 826 (2002) .............................................................................................8

*Illinois v. AmerisourceBergen Drug Corp.*,
No. 3:18-cv-50093 (N.D. Ill.) ..............................................................................4

*In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501, 2007 WL
1886484..................................................................................................................3

*Intergovernmental Risk Management Agency et al. v. McKesson Corp.*,
No. 1:18-cv-06959 (N.D. Ill. Oct. 29, 2018), ECF No. 10 ...................................1

*International Union of Operating Engineers, Local 150, et al. v. McKesson Corp.*,
No. 1:19-cv-00811 (N.D. Ill. Feb. 21, 2019), ECF No. 20 ...................................1

*International Union of Operating Engineers, Local 150, et al. v. McKesson Corp.*,
No. 19-1359 (7th Cir. Mar. 14, 2019), ECF No. 23.............................................6

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
824 F.3d 308 (2d Cir. 2016)...........................................................................8, 14

*Lontz v. Tharp*,
413 F.3d 435 (4th Cir. 2005) ...............................................................................9

*Masters Pharm., Inc. v. U.S. Drug Enfor't Admin.*,
861 F.3d 206 (D.C. Cir. 2017)..........................................................................3, 9

*Merrell Dow Pharms. v. Thompson*,
478 U.S. 804 (1986)..............................................................................................8

iii

*N. Mississippi Med. Ctr., Inc., v. McKesson Corp.*,
    No. 1:18-cv-00078 (N.D. Miss.)................................................................6

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)..............................................7, 8, 12, 13

*In re Nat'l Prescription Opiate Litig.*,
    2018 WL 4019413 (N.D. Ohio Aug. 23, 2018)....................................15, 16

*In re Nat'l Prescription Opiate Litig.*,
    2019 WL 180246 (N.D. Ohio Jan. 14, 2019)......................................16, 17

*In re Nat'l Prescription Opiate Litig.*,
    290 F. Supp. 3d 1375 (J.P.M.L. 2017)...................................................4

*In re: Nat'l Prescription Opiate Litig.*,
    No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161 ...............14

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:18-op-46311-DAP (N.D. Ohio Jan. 17, 2019), ECF No. 15 .........16

*In re National Prescription Opiate Litigation*,
    MDL No. 2804 (J.P.M.L.) ....................................................................2

*Oglesby v. RCA Corp.*,
    752 F.2d 727 (7th Cir. 1985) ...............................................................8

*PDK Labs. Inc. v. U.S. Drug Enf't Admin.*,
    362 F.3d 786 (D.C. Cir. 2004) ............................................................15

*PNC Bank, N.A. v. PPL Elec. Utils. Corp.*,
    189 F. App'x 101 (3d Cir. 2006) ..........................................................7

*R.I. Fishermen's All. v. R.I. Dep't of Envtl. Mgmt.*,
    585 F.3d 42 (1st Cir. 2009)................................................................11

*Rockford v. AmerisourceBergen Drug Corp.*,
    No. 3:18-cv-50092 (N.D. Ill.) ..............................................................4

*Safe Streets Alliance v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) ...........................................................13

*Uintah Cty., Utah v. Purdue Pharma, L.P.*,
    2018 WL 3747847 (D. Utah Aug. 7, 2018) ........................................16

*United States v. Sigma Int'l, Inc.*,
    300 F.3d 1278 (11th Cir. 2002) .........................................................17

iv

*V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*,
    27 F.3d 911 (3d Cir. 1994) ................................................................................8

*Village of Melrose Park v. Purdue Pharma L.P.*,
    No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018), ECF No. 26 ..............................1, 5

**Statutes**

720 ILCS 570 .............................................................................................................9

720 ILCS 570/201 (h) ..............................................................................................11

21 U.S.C. § 882(a) ...................................................................................................15

21 U.S.C. § 903 .......................................................................................................14

28 U.S.C. § 517 .......................................................................................................16

28 U.S.C. § 1331 ..........................................................................................1, 6, 8, 13

28 U.S.C. § 1331(a) ...................................................................................................7

28 U.S.C. § 1367(a) .................................................................................................10

28 U.S.C. § 1441(a) ...................................................................................................6

Controlled Substances Act ......................................................................................14

CSA ................................................................................................................ *passim*

Exchange Act .............................................................................................................7

Federal Controlled Substances Act, 21 U.S.C. § 801, *et seq.* ..................................1, 9

Food, Drug, and Cosmetic Act ................................................................................15

Illinois Admin Code § 1510.50(i) ............................................................................10

Illinois Consumer Fraud and Deceptive Business Practices Act ...............................3

Illinois Controlled Substances Act ......................................................................9, 11

**Other Authorities**

21 C.F.R, § 1301. 74 ..................................................................................................9

21 C.F.R. § 1301.74(b) ...........................................................................................3, 9

Montana Order, 2018 WL 4019413, at *1-2 ................................................................16

H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566 .......................13

Hearing Information, Judicial Panel on Multidistrict Litigation,
    http://www.jpml.uscourts.gov/hearing-information .................................................5

vi

**INTRODUCTION**

McKesson Corporation ("McKesson") filed a notice of removal in this case because Plaintiff Illinois Public Risk Fund ("Plaintiff") asserts claims against McKesson and other distributors of prescription opioids (collectively, "Distributor Defendants"), alleging violations of legal duties that arise, if at all, under the federal Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (the "CSA"). Dkt. No. 1. Plaintiff moves to remand this case to state court for lack of subject matter jurisdiction even though its claims against Distributor Defendants are predicated on alleged violations of federal law. Dkt. No. 11. Plaintiff's reliance on federal law creates federal question jurisdiction under 28 U.S.C. § 1331.

As a threshold matter, this Court need not and should not reach the merits of Plaintiff's remand motion. Instead, this Court should do what judges in the Northern District of Illinois[1] and district courts across the country have done when faced with nearly identical remand motions in other nearly identical cases, and defer consideration of remand to allow it to be decided on a national basis, alongside nearly identical claims brought by other plaintiffs across the country as part of the national opioid litigation that has been consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") for pre-trial purposes in the United States District Court for the Northern District of Ohio (the "MDL").

---

[1] *See City of Harvey v. Purdue Pharma L.P.*, No. 1:18-cv-05756 (N.D. Ill. Sept. 19, 2018), ECF No. 46); *Village of Melrose Park v. Purdue Pharma L.P.*, No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018), ECF No. 26; *Intergovernmental Risk Management Agency et al. v. McKesson Corp.*, No. 1:18-cv-06959 (N.D. Ill. Oct. 29, 2018), ECF No. 10; and *International Union of Operating Engineers, Local 150, et al. v. McKesson Corp.*, No. 1:19-cv-00811 (N.D. Ill. Feb. 21, 2019), ECF No. 20.

Were this Court to reach the merits of Plaintiff's remand motion, the Court should deny the motion, as federal jurisdiction is proper under the Supreme Court's four-part test set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) and *Gunn v. Minton*, 568 U.S. 251 (2013). Under that test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

All four factors are present here. *First*, Plaintiff's Complaint necessarily raises federal issues. Plaintiff's underlying theory of liability against Distributor Defendants is that they allegedly failed to identify, investigate, report and halt "suspicious orders" for prescription opioids. Plaintiff cites to the federal CSA to establish these purported duties. *Second*, the parties actually dispute the federal issues because Distributor Defendants contest whether those duties exist under the CSA and, if so, whether they violated them. *Third*, the federal issues are substantial given the federal interest in the CSA's nationwide regulatory scheme, which requires uniformity, and the federal government's asserted interest in the subject matter of this litigation. And *fourth*, federal jurisdiction will not upset any federal-state balance.

## BACKGROUND[2]

### I. PLAINTIFF'S ACTION

This action is one of more than two thousand related lawsuits asserting claims against pharmaceutical manufacturers, pharmaceutical distributors, and physicians arising out of the sale, marketing, and distribution of prescription opioid medications. The Complaint asserts causes of

---

[2] "JPML Dkt." refers to the JPML's docket in *In re National Prescription Opiate Litigation*, MDL No. 2804 (J.P.M.L.), and "Dkt." refers to this Court's docket in this action.

action against Distributor Defendants for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count I), negligence (Count V), public nuisance (Count VI) and unjust enrichment (Count IX). Dkt. No. 1 at ¶ 7.

Plaintiff's central theory of liability against Distributor Defendants is that they owe a duty under federal law to implement effective controls to detect and "to report suspicious orders of opioids, and not to fill suspicious orders unless and until due diligence had eliminated the basis for its suspicion[,]" *see, e.g.*, Compl. ¶ 742, and that Distributor Defendants "breached their duties . . . by filling unreasonably suspect orders over and over again, without imposing basic controls to monitor, identify, investigate, limit, and report suspicious orders for opioids." *Id.* ¶ 743.

The alleged duties on which Plaintiff's claims rest arise, if at all, out of the federal CSA and its implementing regulations. The alleged reporting duty is set forth in the CSA's implementing regulations. *See* 21 C.F.R. § 1301.74(b) (duty to monitor and report suspicious orders of controlled substances). The alleged shipment-halting duty likewise arises out of the Drug Enforcement Administration's ("DEA") interpretation of the CSA, pursuant to which Distributor Defendants must "decline to ship" suspicious orders for controlled substances. *See e.g., Masters Pharm., Inc. v. U.S. Drug Enfor't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as the source of DEA's "Shipping Requirement").

The Complaint therefore alleges that Distributor Defendants violated federal duties that arise, if at all, under the CSA and related DEA regulations. Plaintiff itself makes this clear by relying on the CSA in the Complaint to establish the alleged duties to report and halt shipments of suspicious orders for controlled substances. *See, e.g.*, Compl. ¶¶ 574-75; 581-82; 743-44; 756 (citing the CSA to establish alleged obligations to report suspicious orders of opioids, and not to

3

fill suspicious orders). Plaintiff likewise fails to identify any independent Illinois law source for any requirement to halt suspicious orders for prescription opioids, alleging only that Illinois law incorporates the federal CSA. *Id*. ¶ 576. Accordingly, Plaintiff's invocation of state law does not actually support any cause of action that depends on Distributor Defendants' alleged failure to report or stop shipment of opioid orders distributed in Illinois.

## II. THE MULTIDISTRICT LITIGATION

Not only does Plaintiff base its claims on federal law, its claims are nearly identical to those already being asserted in federal court by hundreds of other plaintiffs against opioid manufacturers, distributors, and pharmacies. To consolidate these cases for coordinated pre-trial proceedings, the JPML formed an MDL in the Northern District of Ohio. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017). In total, more than 1,800 actions are now pending in the MDL, including numerous actions originally filed in or removed to district courts in Illinois.[3] As new cases are filed across the country each week, the JPML continues to transfer more actions to the MDL.

Upon removal, a notice was filed with the JPML tagging this case for potential transfer to the MDL. *See* JPML Dkt. No. 4345. Based on that notice, the JPML issued an order indicating that this case should be transferred to the MDL on the ground that it appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and

---

[3] *See, e.g.*, JPML Dkt. No. 368 (finalizing CTO-1 and transferring *Chicago v. Purdue Pharma L.P.*, No. 1:14-cv-04361 (N.D. Ill.), along with 114 other actions); JPML Dkt. No. 1053 (finalizing CTO-17 and transferring *Illinois v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-50093 (N.D. Ill.) and *Rockford v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-50092 (N.D. Ill.), along with 24 other actions); JPML Dkt. No. 962 (finalizing CTO-15 and transferring *Chicago v. Cardinal Health, Inc.*, No. 1:18-cv-01639 (N.D. Ill.), along with 22 other actions).

assigned to Judge Polster." Conditional Transfer Order, JPML Dkt. No. 4424 (attached as

**Exhibit 1**).

Plaintiff thereafter filed an opposition to transfer with the JPML. JPML Dkt. No. 4522. As

a result, the JPML automatically stayed its conditional order and issued a briefing schedule. JPML

Dkt. No. 4525. Briefing on transfer will conclude on July 11, 2019, and McKesson anticipates that

the JPML will make a final transfer decision at the earliest shortly after its hearing on July 25,

2019.[4]

<strong>ARGUMENT</strong>

## I. THE COURT SHOULD DEFER CONSIDERATION OF PLAINTIFF'S REMAND MOTION.

Although Plaintiff's Complaint necessarily raises substantial federal issues, the Court may

and should defer ruling on Plaintiff's remand motion altogether. While federal jurisdiction is

proper here, delaying consideration of Plaintiff's remand motion until the JPML makes a final

transfer decision will promote judicial efficiency and ensure consistent remand rulings by allowing

the MDL court in the Northern District of Ohio to consider this and all other remand motions

presenting similar issues.

Moreover, as McKesson explained in its motion to stay, judges both in this district and in

several other districts throughout the country have stayed proceedings or otherwise deferred

consideration of pending remand motions presenting precisely the same jurisdictional issue as

Plaintiff's remand motion,[5] so that the JPML may first decide whether to transfer the action to the

---

[4] *See* Hearing Information, Judicial Panel on Multidistrict Litigation, http://www.jpml.uscourts.gov/hearing-information.

[5] *See, e.g., Village of Melrose Park v. Purdue Pharma L.P.*, No. 1:18-cv-05288 (N.D. Ill.) (removed on federal-question grounds and transferred to MDL despite pending remand motion), *City of Harvey v. Purdue Pharma L.P.*, No. 1:18-cv-05756 (N.D. Ill.) (same); *City of Paterson v.*

MDL. In fact, the Seventh Circuit has determined that it is entirely proper for a district court to stay briefing on a motion to remand a case to Cook County until the JPML resolves the issue of whether the matter should be transferred to the Opioid MDL in the Northern District of Ohio. *See International Union of Operating Engineers, Local 150, et al. v. McKesson Corp.*, No. 19-1359 (7th Cir. Mar. 14, 2019), ECF No. 23.

Therefore, in the interests of promoting judicial economy and consistency of rulings, this Court should defer consideration of Plaintiff's remand motion until after the JPML decides whether to transfer the action to the MDL.

## II. PLAINTIFF'S COMPLAINT NECESSARILY RAISES DISPUTED AND SUBSTANTIAL ISSUES OF FEDERAL LAW.

Even if the Court were inclined to consider Plaintiff's remand motion, the motion should be denied. Given Plaintiff's invocation of federal law and alleged duties premised on federal law, federal question jurisdiction is proper here. Although Plaintiff purports to assert state law causes of actions, it predicates its claims on alleged violations of the CSA. Accordingly, those claims necessarily raise substantial federal issues that should be resolved in federal court.

Federal district courts have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187,

---

*Purdue Pharma L.P.*, Case No. 2:17-cv-13433 (D.N.J.) (same); *County of San Mateo v. McKesson Corporation*, No. 3:18-cv-04535 (N.D. Cal.) (same); *Cty. of Hudson v. Purdue Pharma L.P.*, No. 2:18-cv-09029 (D.N.J.) (same); *Camden County v. Purdue Pharma L.P.*, No. 1:18-cv-11983 (D.N.J.) (same); *N. Mississippi Med. Ctr., Inc., v. McKesson Corp.*, No. 1:18-cv-00078 (N.D. Miss.) (same); *City of Bangor v. Purdue Pharma L.P.*, No. 1:18-cv-00298 (D. Me.) (same).

194 (2d Cir. 2005); *e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005). Even where state law creates the asserted causes of action, it may raise federal issues sufficient to warrant removal jurisdiction. Under the Supreme Court's *Grable* and *Gunn* decisions, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *e.g., Grable*, 545 U.S. at 315. "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quotation marks omitted).

Courts have found these factors to be satisfied where the plaintiff predicates its state law claims on violations of federal statutes governing complex, nationwide regulatory schemes where uniformity is essential. *See, e.g.*, *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"). This case, too, satisfies all four elements of *Grable* and *Gunn*.

A.      The Complaint "Necessarily Raises" Federal Questions.

An action "necessarily raises" a federal question when "the right to relief depends upon the construction or application of federal law." *PNC Bank*, 189 F. App'x at 104 n.3. Significantly, "an action under 28 U.S.C. § 1331(a) arises . . . *if the action requires construction of a federal statute*,

or at least a distinctive policy of a federal statute requires the application of federal legal principles." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) (emphasis added); *e.g., Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808–09 (1986) (federal question jurisdiction exists if "vindication of a right under state law *necessarily turn*[*s*] *on some construction of federal law*" (emphasis added, internal citation omitted)).

"[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded-complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002). The artful pleading doctrine, however, empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors. *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992). In other words, a "plaintiff may not frame his action under state law and omit federal questions that are essential to recovery." *Id. See also Oglesby v. RCA Corp.*, 752 F.2d 272, 275 (7th Cir. 1985) (a plaintiff may not artfully omit facts that indicate federal jurisdiction).

In determining whether state law claims turn on construction or application of federal law, the Court must "begin by considering the duty underlying each claim." *NASDAQ*, 770 F.3d at 1020. "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law," *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016), or where the "singular duty" underlying the claim arises under federal law. *NASDAQ*, 770 F.3d at 1021.

Here, Plaintiff's claims necessarily raise federal issues because they are expressly premised on Distributor Defendants' alleged violations of alleged legal duties that, according to Plaintiff, arise out of the CSA and its implementing regulations—*i.e.*, the duties to report and stop shipments

of otherwise lawful orders of controlled substances to Illinois. *See* 21 C.F.R. § 1301.74(b) (setting forth reporting requirement); *Masters Pharm*, 861 F.3d at 212-13 (discussing shipping requirement). Despite its protestations to the contrary, Plaintiff's reliance on federal law is evident on the face of the Complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction exists when federal question is presented "on the face of the plaintiff's properly pleaded complaint"); *Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015) (state law claims "necessarily raise" a federal question where "[t]he resolution of th[e] case turns on issues of federal law"); *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question").

Throughout the Complaint, Plaintiff cites to federal sources to establish the alleged duties to report and halt suspicious orders, and repeatedly pleads that Distributor Defendants' alleged violations of these duties give rise to Plaintiff's causes of action. For example:

- Plaintiff cites to a host of federal laws, claiming that Distributor Defendants "breached their duties to . . . monitor, identify, investigate, limit, and report suspicious orders for opioids." Compl. ¶ 742-43 ("Each Distributor Defendant had a duty under, *inter alia*, 21 U.S.C. § 801 et seq., 21 C.F.R, § 1301. 74 . . . to report suspicious orders of opioids, and not to fill suspicious orders unless and until due diligence had eliminated the basis for its suspicion.").

- Plaintiff acknowledges that the source of the duty to report or halt suspicious orders is the federal CSA and its implementing regulations, and contends that these federal obligations are "expressly incorporate[d] . . . into state law[.]" *Id.* ¶ 576.

- In pleading public nuisance, Plaintiff claims that "Distributor Defendants intentionally and/or recklessly distribut[ed] and [sold] prescription opioids that they knew, or reasonably should have known, would be diverted to illegal and/or unapproved uses while illegally failing to put appropriate controls in place[.]" *Id.* ¶ 753. As Plaintiff makes clear, the "appropriate controls" that Distributor Defendants allegedly failed to implement consist of the very same "system that would disclose the existence of suspicious orders and/or fail to report and halt suspicious orders, as required by the [Illinois Controlled Substances Act] . . . and the CSA." *Id.* ¶ 756. As to the ICSA, Plaintiff cites to 720 ILCS 570, which simply incorporates requirements from the federal CSA.

9

As these and other examples demonstrate, Plaintiff's claims against Distributor Defendants rest squarely on its allegations that Distributor Defendants breached alleged duties purportedly arising out of the CSA and its implementing regulations. Indeed, Plaintiff's invocation of federal law undergirds its entire theory of liability against Distributor Defendants.

Although a plaintiff "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar*, 482 U.S. at 392 (emphasis added), Plaintiff here primarily relies on federal law, namely, whether Distributor Defendants violated the CSA by failing to report, prevent, or halt suspicious orders for prescription opioids.[6] In neither the Complaint nor its remand motion does Plaintiff cite a single Illinois authority that independently requires Distributor Defendants to report or halt shipments of suspicious orders for controlled substances. To the contrary, Plaintiff relies on federal law in support of those duties. Thus, to prevail on its claims as pleaded, Plaintiff would have to establish that Distributor Defendants breached alleged duties that arise under federal law.

Despite its clear reliance on federal law, Plaintiff asserts that its claims do not necessarily raise federal issues. In support of this position, Plaintiff cites to a handful of Illinois laws and regulations. These Illinois laws and regulations, however, simply reference and incorporate standards set by federal law. Specifically, Plaintiff cites Illinois Admin Code § 1510.50(i), which merely states that "[w]holesale drug distributors shall operate in compliance with applicable

---

[6] It is not necessary for federal jurisdiction that McKesson establish that all of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *Chicago v. Int'l C. of Surgeons*, 522 U.S. 156, 166 (1997). Because the Court has original jurisdiction over at least one count, it has supplemental jurisdiction over Plaintiff's remaining counts against McKesson and the other Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

federal, state and local laws and regulations." Compl. ¶ 576. Similarly, Plaintiff cites the Illinois Controlled Substances Act ("ILCSA") as requiring distributors to "provide effective controls and procedures to guard against theft and diversion[,]" *see* Compl. ¶ 569 (citing 720 ILCS 570/201 (h)), but those measures are merely routine security requirements that have no bearing on any alleged duty to report or halt suspicious orders, which forms the basis for Plaintiff's theory of liability. To the extent that the Illinois laws incorporate by reference the CSA and its implementing regulations pertaining to suspicious orders, any potential duties to monitor, report or halt suspicious orders can be understood only by interpreting *federal* law. More important, if Illinois law incorporates requirements arising under the CSA, that fact would *bolster*—not undermine— federal jurisdiction. As one court has explained, the "incorporation of a federal law into the state statute on which the plaintiffs' cause of action is grounded" necessarily raises an "embedded federal question." *R.I. Fishermen's All. v. R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009); *e.g., Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (state law conversion claim necessarily raises federal question where "Oklahoma personal property law includes and incorporates the federal requirement").

### B.    The Parties "Actually Dispute" the Federal Issues.

Contrary to Plaintiff's assertions, the parties actually dispute the federal issues, as the parties contest whether the CSA and its implementing regulations in fact give rise to duties to report and halt suspicious orders for prescription opioids, the precise scope and contours of any such duties that might exist under the CSA and whether Distributor Defendants violated these alleged duties by failing to report and halt suspicious orders. Indeed, because Plaintiff's claims against Distributor Defendants depend on their theory that Distributor Defendants breached these alleged duties, this issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

11

This actual dispute also presents a nearly-pure question of law. In assessing whether Distributor Defendants breached duties arising out of the CSA, the Court must determine not only Distributor Defendants' conduct, but also whether that conduct falls within the scope of the CSA and any alleged duties arising under the CSA. That is, the Court must examine "the contours of [the] federal duty," "the scope of that duty," and "whether [Distributor Defendants' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023. That analysis will require the Court to determine whether the CSA and its implementing regulations in fact give rise to the duties to report and halt suspicious orders, what any such duties entail, what constitutes a "suspicious" delivery under the CSA's implementing regulations, what actions should have been taken to resolve those suspicions or "halt" the shipment, whether existing processes satisfy federal reporting guidelines, and other disputes arising under federal regulations. Given these live disputes about the existence and scope of Distributor Defendants' duties under the CSA, Plaintiff cannot credibly maintain that no federal issue is actually disputed.

## C. The Federal Issues Are "Substantial."

The Supreme Court has explained that "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A federal issue "can be important for many reasons" *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017) (internal quotation marks omitted). Exercising federal-question jurisdiction in such cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

The federal issues presented here are important to the federal system as a whole because the United States has a strong interest in ensuring a uniform interpretation of the federal CSA. *See,*

12

*e.g., Broder*, 418 F.3d at 195 (courts have often found federal issues to be sufficiently substantial where they raise "questions [that] involve aspects of . . . complex federal regulatory scheme[s] . . . as to which there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum") (quotation marks omitted).

Moreover, the scope of the obligations the federal CSA places on distributors of pharmaceuticals—*e.g.,* whether and to what extent it requires distributors to halt "suspicious" orders—is a nearly pure legal question that has broad significance to the federal government, including by affecting the DEA's ability to enforce the CSA, and methods for enforcing it. Furthermore, the resolution of this legal issue will have application not only in this case, or even in the two thousand-plus opioid-related actions pending in the MDL, but will apply broadly to all cases in which a plaintiff alleges that any distributor of pharmaceuticals breached its alleged duties to report or halt shipments of suspicious orders. *E.g., Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 897 (10th Cir. 2017) (plaintiffs' attempts to privately enforce federal CSA to enjoin Colorado marijuana law "raise, at minimum, 'substantial question[s] of federal law'" on the merits that were sufficient for the district court to have exercised jurisdiction over the preemption claims in their entirety under § 1331 (citations omitted)).

In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a *unified* approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4572 (emphasis added). Plaintiff's claims thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ*, 770 F.3d at 1024. Furthermore, "minimizing uncertainty

13

over" reporting and shipping obligations under the CSA "justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Jacobson*, 824 F.3d at 317–18.

On the other hand, allowing state courts to resolve claims premised on the CSA—and to determine the existence and scope of any duties under the CSA—creates the potential for inconsistent interpretations of the CSA across jurisdictions. *See* 21 U.S.C. § 903 (although Congress did not intend to "occupy the field" of controlled substances regulation with CSA, it pre-empts inconsistent state law). Moreover, allowing state courts to issue conflicting interpretations of the federal CSA would inevitably undermine the federal government's efforts to enforce the statute and sow confusion among federally-regulated entities.

The federal government has made clear the effect that the opioid litigation will have on its ability to enforce the CSA. Most notably, the Department of Justice filed a Statement of Interest on behalf of the United States in the MDL proceedings, asserting the federal government's interests in, among other things, its "law enforcement and legal activities in conjunction . . . with the multidistrict litigation," specifically including "[c]riminal and civil tools available *under the Controlled Substances Act*." *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161, at 7 (attached as **Exhibit 2**) (emphasis added).

> **D.**    **Federal Jurisdiction Will Not Disrupt the Congressionally Approved Balance of Federal-State Judicial Responsibilities.**

Finally, Plaintiff asserts that federal jurisdiction in this case would upset the balance between federal and state judicial responsibilities. Plaintiff is wrong. Federal courts are *already* the exclusive fora for determining the permissible scope of restraints on Distributor Defendants under the federal CSA. In fact, federal courts exclusively hear challenges to DEA authority to

enforce the federal CSA against pharmaceutical distributors.[7] Similarly, federal courts have exclusive jurisdiction over proceedings seeking to enjoin violations of the CSA. *See* 21 U.S.C. § 882(a). Moreover, federal jurisdiction is further warranted given the hundreds of similar actions pending in the MDL, which "in the aggregate . . . have the potential to substantially influence the scope and success" of the federal statutory scheme to regulate controlled substances. *Evergreen Square of Cudahy*, 776 F.3d at 468. "[T]he federal government has a strong interest in these issues being decided according to uniform principles[,]" which "will best be achieved by allowing suit in federal courts." *Id*. Accordingly, far from upsetting the balance between federal and state judicial responsibilities, the questions presented in Plaintiff's Complaint are precisely those over which federal courts already exercise jurisdiction.

## III. THE REMAND DECISIONS CITED BY PLAINTIFF ARE DISTINGUISHABLE; THE MDL COURT HAS NOT REJECTED MCKESSON'S ASSERTED GROUND FOR REMOVAL.

Recognizing that it cannot succeed on its claims without invoking federal law, Plaintiff attempts to distract from its reliance on federal law by citing remand decisions from opioid-related cases in other jurisdictions. Dkt. No. 13-1 at 1,7,10-11,14,16.

These nonbinding and inapposite district court decisions do not alter the analysis here. To begin with, some of the cases that Plaintiff cites were removed on entirely different grounds than this case. For example, Plaintiff cites Judge Polster's decision in *In re Nat'l Prescription Opiate Litig.*, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018) ("Montana Order"). The Montana Order is inapplicable, however, because its removal was based on a different federal statute—the Food,

---

[7] *E.g., PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786 (D.C. Cir. 2004) (challenge to DEA program enforcing CSA to prevent diversion of ephedrine); *Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*, 913 F. Supp. 2d 243 (E.D. Va. 2012) (resolving registrant's motion to require DEA to return subpoenaed documents).

Drug, and Cosmetic Act ("FDCA")—and different defendants—pharmaceutical manufacturers. Those defendants removed on the ground that Montana's state law claims imposed obligations inconsistent with federal regulations, even though the State's claims did not rest on alleged violations of federal law. Montana Order, 2018 WL 4019413, at *1-2. By contrast, removal in this action was premised on the federal CSA. Because the basis for removal in this case involves a different statute, a different theory of liability against different defendants and a different factual context. The Montana Order does not compel the conclusion that remand is warranted.

The other decisions that Plaintiff cites also fundamentally understate the critical importance of the CSA to the federal Government. For instance, in *Granite City*, the court decided the issue *sua sponte* without the benefit of any briefing whatsoever. *City of Granite City, IL v. AmerisourceBergen Drug Corp.*, 2018 WL 3408126, at *2 (S.D. Ill. July 13, 2018). In that case, the court posited, without any analysis, that judicial interpretations of the CSA "do not raise a larger substantial federal interest, nor do they implicate the action of any federal department, agency, or service." *Id.* This ignores the fact that the federal Government has filed a formal Statement of Interest pursuant to 28 U.S.C. § 517 in the MDL outlining how its nationwide regulatory scheme for controlled substances is guided by the CSA. *E.g.,* Statement of Interest at 7. The same can be said for the *Uintah Cty., Utah v. Purdue Pharma, L.P.*, 2018 WL 3747847, at *4 (D. Utah Aug. 7, 2018) decision.

Finally, Plaintiff wrongly contends that Judge Polster has "rejected" defendants' arguments for federal question jurisdiction. Dkt. 13-1 at 7. In support of that proposition, Plaintiff cites to an order from the MDL court, *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019), that Judge Polster *withdrew as moot* within days of its filing. *See In re Nat'l Prescription Opiate Litig.*, No. 1:18-op-46311-DAP (N.D. Ohio Jan. 17, 2019), ECF No. 15

16

(attached as **Exhibit 3**). That order is thus of no legal effect. *E.g., United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (Vacated opinions "are officially gone. They have no legal effect whatever. They are void. None of the statements made in either of them has any remaining force and cannot be considered to express the view of th[e] [issuing] Court.").[8]

## CONCLUSION

For the reasons set forth above and in its Notice of Removal, McKesson respectfully requests that the Court deny Plaintiff's motion to remand.

June 6, 2019

/s/      Daniel L. Stanner
Daniel L. Stanner
Kyle A. Cooper
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
ctabet@tdrlawfirm.com
dstanner@tdrlawfirm.com
kcooper@tdrlawfirm.com

*Attorneys for McKesson Corporation*

---

[8] Moreover, Judge Polster's now-withdrawn order, which would have remanded a case brought by the Kentucky attorney general, rested in part on grounds not present here. Judge Polster emphasized that he would have granted Kentucky's remand motion in large part because in a prior ruling, the court had "already recognized that it has no jurisdiction over state attorneys general." *Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2 (emphasis added). That rationale has no bearing here.

17